Peggy MAYES, Plaintiff–Appellant,

v.

Larry G. MASSANARI, Commissioner of Social Security, Defendant–Appellee.

No. 00–35181.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 7, 2001*

Filed Aug. 27, 2001

Amended Dec. 21, 2001

* The panel unanimously finds this case suitable for decision without oral argument. Fed.

R.App. P. 34(a)(2).

James Dorr Johnson, Montana Legal Services Assoc., Butte, Montana, for the plaintiff-appellant.

Deanne L. Sandholm, Assistant United States Attorney, Helena, Montana, for the defendant-appellee.

Before: TASHIMA and TALLMAN, Circuit Judges, and MOLLWAY, District Judge.**

ORDER AND AMENDED OPINION

MOLLWAY, District Judge:

**ORDER**

The opinion filed on August 27, 2001, slip op. 11597, and reported at 262 F.3d 963, is amended by adding a new footnote 3, at the end of the fourth sentence (first paragraph) of Part III.A, slip op. at 11610, 262 F.3d at 970, as follows:

We need not decide whether good cause is required for submission of new evidence to the Appeals Council, as Mayes conceded in her briefs that good cause was indeed required. In a petition for rehearing, which we deny, Mayes raises

** The Honorable Susan Oki Mollway, United States District Judge for the District of Hawaii, sitting by designation.

for the first time the argument that 20 C.F.R. § 404.970(b)(2001) requires the Appeals Council to receive new evidence without regard to the issue of good cause. Citing *Ramirez v. Shalala,* 8 F.3d 1449 (9th Cir.1993), Mayes belatedly argues that good cause is required only when new evidence is submitted to a district court. Mayes misapprehends *Ramirez.* Because the parties agreed that the new evidence submitted for the first time to the Appeals Council should be considered, *id.* at 1451–52, *Ramirez* does not address whether submissions to the Appeals Council are or are not subject to the good cause requirement.

All subsequent footnotes are renumbered accordingly.

With the foregoing amendments, the petition for panel rehearing is denied.

## OPINION

Peggy J. Mayes ("Mayes") appeals the district court's affirmance of a decision by an Administrative Law Judge ("ALJ") that ended her disability insurance benefits under the Social Security Act. Mayes also appeals the district court's refusal to remand the case to the ALJ in light of evidence obtained after the ALJ issued his decision.

The ALJ found that, although Mayes had numerous medical problems, she could not be deemed disabled if, as required by 42 U.S.C. § 423(d)(2)(C) (Supp.2001), the ALJ disregarded her alcohol dependence. Mayes contends that, had the ALJ developed the record, he would have discovered her herniated discs, diagnosed after the hearing held by the ALJ ("ALJ Hearing"). The ALJ would then have found her disabled and therefore eligible to receive disability insurance benefits, Mayes says. Mayes therefore asks this court to reverse the district court's affirmance of the ALJ's

decision and to remand the case to the ALJ for further consideration of whether she is disabled in light of her herniated discs.

We affirm the ALJ's determination that Mayes was not disabled. Substantial evidence supports that determination, and the ALJ applied the proper legal standard. We also affirm the district court's refusal to remand the case to the ALJ for consideration of the subsequent herniated disc diagnosis. On de novo review, we find that this "new" evidence was not material to the ALJ's disability determination. Even if it was material, the district court did not abuse its discretion in refusing to remand the case to the ALJ because Mayes did not demonstrate good cause for having failed to provide that evidence earlier.

### I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND.

The Social Security Act, 42 U.S.C. § 423(a)(1) (Supp.2001), allows certain people with disabilities to obtain disability insurance benefits. Mayes initially applied for these benefits on January 11, 1988, listing "Spinal Problems" as her disability. After an administrative hearing, Mayes was found disabled for purposes of the Social Security Act. Although Mayes' petition for an administrative hearing had been based on alleged back problems, she was found disabled on the basis of "severe alcoholism with depression, characterized by suicidal attempts and ideation, inability to eat or sleep, feelings of worthlessness, and blackouts."

About seven and a half years later, on November 7, 1995, Mayes was notified that the determination that she was disabled was being reviewed by the Social Security

Administration.[1] In conjunction with that review, Mayes told the Social Security Administration that her disabling conditions were "rheumatoid arthritis (spine, hips, knees, ankles are worst)," a cancer known as Bowens' disease, "lung problems," and a "hormone imbalance." The Social Security Administration determined that, as of April 30, 1996, Mayes would cease to be eligible for disability insurance benefits. It reasoned that Mayes "show[ed] pretty good voluntary control over her drinking." It concluded that Mayes' depression was mild and that her "activities of daily living and social functions [were] normal." On February 12, 1996, Mayes filed for reconsideration, stating that her "physical ailments [had] worsened."

On March 29, 1996, 42 U.S.C. § 423 was amended. Under the amended section 423, "[a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."[2] 42 U.S.C. § 423(d)(2)(C) (Supp. 2001). In light of this amendment, the Social Security Administration, on August 19, 1996, notified Mayes that it would be terminating her disability benefits as of January 1997. *See* Pub.L. 104–121 (1996) (stating that the effective date of the amendment for persons already receiving disability insurance benefits was January 1, 1997). This notification appears to have acted as a denial of Mayes' February 12, 1996, request for reconsideration of the decision to end her disability benefits.

Mayes then requested a "face-to-face evidentiary hearing," claiming that she was disabled independent of her alcoholism. On September 19, 1996, the disability hearing officer found that Mayes was still disabled, that her disability arose from alcoholism, and that she was not entitled to disability benefits, citing Pub.L. 104–121 (enacted as 42 U.S.C. § 423(d)(2)(C)). The disability hearing officer noted that Mayes "had been treated for back pain, but her primary condition was alcoholism."

In March 1997, Mayes requested a hearing before an ALJ. At that time, she said that she had rheumatoid arthritis, bronchitis, asthma, a hormone imbalance, Bowens' disease, "blockage somewhere between heart & brain that cause[d her] to stop breathing," peripheral vision problems, and continuing weakness. She noted that, two years earlier, she had seen Dr. C.E. Buehler, an orthopedist, for a growth on her spine that she said was made inoperable by cancer.

The ALJ held a hearing on May 1, 1997. At that hearing, Mayes testified that her most serious problem was her rheumatoid arthritis. In addition, she was congested, her legs went numb, she had Bowens' disease, she had cataracts and glaucoma, and she had problems bending because her back hurt. Mayes testified that, despite these problems, on a normal day, she got up, watched television, and straightened up her house. With some help, she could go shopping and do the laundry. Mayes also testified that she painted by numbers, worked on puzzles, listened to music, and tried to exercise every day, and that she and her boyfriend sometimes went out for lunch and dinner.

1. This notification does not appear to have been related to the amendment of section 423 discussed in the next paragraph. Instead, it appears to have been part of a periodic review of Mayes' disability.

2. "Subchapter" refers to "Subchapter II–Federal Old–Age, Survivors, and Disability Insurance Benefits," 42 U.S.C. §§ 407 to 434 (1991 & Supp.2001).

Mayes' mother also testified before the ALJ. She stated that Mayes had difficulty breathing, that she was anxious and depressed, and that she frequently got sick. Mayes' mother did not have any other observations about Mayes and did not testify about any back problems.

No medical doctor testified before the ALJ about Mayes' physical ailments. Mark Mozer ("Mozer"), a clinical psychologist, told the ALJ that, absent Mayes' alcohol dependence, Mayes' remaining diagnoses did not create significant deficiencies from the standpoint of activities of daily living. Mozer did not testify regarding the extent and seriousness of Mayes' physical ailments.

Lawrence Rowan, a vocational expert, told the ALJ that, although Mayes could not do her previous work as a dishwasher or waitress, she could be a food and beverage clerk, surveillance system monitor, information clerk, or mail clerk, all positions that were available in all regions of the national economy.

Based on the evidence submitted to him, the ALJ, on June 19, 1997, found that Mayes had "rheumatoid arthritis, bronchitis, possible glaucoma with right eye cataract, diffuse peripheral neuropathy likely secondary to alcohol ingestion, depressive disorder not otherwise specified, and alcohol dependence." The ALJ determined that, absent Mayes' dependence on alcohol, these impairments were not sufficient, either independently or as a whole, to qualify as disabilities under the Social Security Act. Accordingly, the ALJ determined that Mayes was not eligible for disability insurance benefits.

In November 1997, after the ALJ had issued his decision, Dr. Buehler, Mayes' orthopedist, examined Mayes again and diagnosed her as having "a minimal sized disc herniation at 4–5 & a minimal sized L5–S1 disc herniation primarily on the left side." Dr. Buehler noted that one of the herniated discs "protrude[d] into the left L5–S1 nerve root canal."

Mayes appealed the ALJ's decision to the Appeals Council, which found no basis for granting Mayes' request for review. The Appeals Council noted that the "additional evidence," presumably Dr. Buehler's November 1997 diagnosis, was not relevant to whether Mayes had been disabled before the ALJ issued his decision on June 19, 1997.

Mayes appealed the ALJ's decision to the United States District Court for the District of Montana. The Magistrate Judge filed findings and a recommendation ("F & R") that the ALJ's decision be affirmed. The Magistrate Judge reasoned that there was substantial evidence supporting the ALJ's conclusions as to the extent of Mayes' impairments, and that the November 1997 diagnosis did not supply "good cause" to remand the case to the ALJ. The District Judge adopted the F & R and affirmed the ALJ's decision in an order filed on January 18, 2000.

Mayes filed a timely Notice of Appeal on February 17, 2000.

## II. *DENIAL OF DISABILITY INSURANCE BENEFITS.*

### A. *"Standard of Review."*

■ A district court's order affirming, reversing, or modifying the denial of disability insurance benefits is reviewed de novo. *Aukland v. Massanari,* 257 F.3d 1033, 1034–35 (9th Cir.2001); *Harman v. Apfel,* 211 F.3d 1172, 1174 (9th Cir.), *cert. denied,* 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).

■ "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g) (Supp.2001). A court

must affirm the findings of fact if they are supported by "substantial evidence" and if the proper legal standard was applied. *Aukland*, 257 F.3d 1033, 1035 ("This court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole"); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) ("The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards"). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe*, 108 F.3d at 980; *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.1990). Whether substantial evidence supports a finding is determined from the record as a whole, with the court weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *Sandgathe*, 108 F.3d at 980; *Clem*, 894 F.2d at 330. When the evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision. *Aukland*, 257 F.3d 1033, 1034–35; *Sandgathe*, 108 F.3d at 980.

B. *The ALJ's Decision was Supported by Substantial Evidence and Was Based on the Proper Legal Standard.*

 Mayes bases her argument that the ALJ's decision was not supported by substantial evidence on Dr. Buehler's herniated disc diagnosis reached five months after the ALJ issued his decision. In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1150 (9th Cir.2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). Mayes contends that the ALJ should have developed the record and determined that Mayes had herniated discs even before Dr. Buehler reached his diagnosis. Mayes would improperly shift her own burden to the ALJ.

It was Mayes' duty to prove that she was disabled. *See* 42 U.S.C. § 423(d)(5) (Supp.2001) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). *Accord Clem*, 894 F.2d at 330 ("Clem has the burden of showing that he is disabled"). The Code of Federal Regulations explains:

> you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a) (2000). *Accord* 20 C.F.R. § 404.1512(c) (2000) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled"). Mayes did not provide the ALJ with any medical evidence indicating that she had herniated discs until after the ALJ Hearing.

 The ALJ had no duty to develop the record by diagnosing Mayes' herniated discs. An ALJ's duty to develop the record further is triggered only when there is

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan,* 242 F.3d at 1150. The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Substantial evidence supported the ALJ's decision that Mayes was not disabled.

For purposes of disability insurance benefits, a qualifying "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A) (Supp.2001); *see also* 20 C.F.R. § 404.1594(b)(4) (2000) (defining "disability" as including "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment(s)"). Individuals are considered disabled only if their physical or mental impairments are of such severity that they are not only unable to do their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) (Supp. 2001).

Mayes was not engaged in substantial gainful activity. Accordingly, the ALJ had to examine other factors to determine the effect of her impairments. A determination of whether an individual's impairments are of a sufficient medical severity to form the basis of eligibility for disability insurance benefits turns on the combined effect of all of the individual's impairments. 42 U.S.C. § 423(d)(2)(B) (Supp.2001); 20 C.F.R. § 404.1520(c) (2000). Impairments are severe if they significantly limit a person's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c)

(2000). Federal regulations include a list of impairments sufficiently severe that an individual qualifies for benefits. *See* Appendix 1 to 20 C.F.R. Part 404 (2000); 20 C.F.R. § 404.1525 (2000) ("The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity"). The ALJ determined that, although Mayes' impairments were severe, they did not meet or equal the severity of any impairment described in the Listing of Impairments. Mayes does not challenge this determination.

When the ALJ cannot make a disability determination based on current work activity or on medical facts alone, and when an individual's impairments are severe, the ALJ must review the applicant's residual functional capacity and the physical and mental demands of the work she did in the past. "Residual functional capacity" is what the individual can still do despite her limitations. 20 C.F.R. § 404.1545 (2000). If the individual can still do the work she did in the past, then the ALJ should determine that she is not disabled. 20 C.F.R. §§ 404.1520(e), 404.1561 (2000). If she cannot do the work she did in the past, the ALJ should consider her residual functional capacity, age, education, and past work experience to determine whether she can do other work. If she can do other work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 404.1594(f)(8) (2000); *see also* Social Security Administrative Rulings 1983–1991 (1992) at 85–15 ("If a person has a severe medically determinable impairment which, though not meeting or equaling the criteria in the Listing of Impairments, prevents the person from doing past relevant work, it must be determined whether the person can do other work").

The ALJ determined that Mayes could not perform her past relevant work, but

that she could perform "unskilled sedentary work as a food and beverage order clerk and surveillance system monitor, and unskilled light work as a[n] information clerk and mail clerk," all jobs existing in the national economy. This determination was supported by substantial evidence in the form of testimony by Lawrence Rowan, a vocational expert, as well as medical notes, Mayes' own testimony, and Mayes' mother's testimony. The medical evidence did not show that Mayes was unable to work. Mayes' testimony that she could do many daily activities suggested that she could also work. Mayes' mother testified only that Mayes had difficulty breathing, was anxious and depressed, and that Mayes was frequently sick. Even when pressed for other observations about Mayes, Mayes' mother did not indicate that Mayes was unable to work.

Mayes is not contending in this appeal that the evidence before the ALJ was sufficient to establish that she was disabled. Instead, she merely argues that, had the ALJ developed the record and established her back condition, he would have found her disabled. As discussed above, however, it was not the ALJ's duty to develop the record in such a manner.

Because the ALJ's determination that Mayes was not disabled was supported by substantial evidence, and because the ALJ applied the correct legal standard, we affirm the ALJ's disability determination, as well as the district court's affirmance of that determination.

## III. REMAND REQUEST BASED ON NEW EVIDENCE.

### A. Standard of Review.

Mayes requests a remand of her case to the ALJ for consideration of the herniated disc diagnosis. There has been some confusion about what standard applies to this court's review of a district court's ruling on a request to remand a case to an ALJ for consideration of new evidence. See Harman, 211 F.3d at 1176 n. 5 (recognizing that different panels of the Ninth Circuit have applied an abuse of discretion standard and a de novo standard in reviewing district court remand decisions). We now clarify the standard.[3]

In 1990, the Ninth Circuit held that a district court's refusal to remand a case to the ALJ for consideration of new evidence is reviewed for abuse of discretion. Clem, 894 F.2d at 332 ("We review a district court's refusal to remand to the Secretary on the basis of extra-record evidence for abuse of discretion"). However, Clem did not expressly overrule Booz v. Secretary of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir.1983), which applied a de novo standard in reviewing a remand request. Booz involved an analysis of whether new evidence proffered by a claimant was material to a disability determination.

Booz and Clem are consistent with each other, but applicable to different portions of the remand analysis. Under

---

3. We need not decide whether good cause is required for submission of new evidence to the Appeals Council, as Mayes conceded in her briefs that good cause was indeed required. In a petition for rehearing, which we deny, Mayes raises for the first time the argument that 20 C.F.R. § 404.970(b)(2001) requires the Appeals Council to receive new evidence without regard to the issue of good cause. Citing Ramirez v. Shalala, 8 F.3d 1449 (9th Cir.1993), Mayes belatedly argues that good cause is required only when new evidence is submitted to a district court. Mayes misapprehends Ramirez. Because the parties agreed that the new evidence submitted for the first time to the Appeals Council should be considered, id. at 1451–52, Ramirez does not address whether submissions to the Appeals Council are or are not subject to the good cause requirement.

42 U.S.C. § 405(g) (Supp.2001), in determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier. *Booz* governs the materiality inquiry, applying a de novo standard to this question of law. On the other hand, *Clem* governs the good cause inquiry, applying an abuse of discretion standard to this question of fact. Under the abuse of discretion standard, the decision of the district court is reversed only when the appellate court is firmly convinced that the reviewed decision lies beyond the pale of reasonable justification under the circumstances. *Harman*, 211 F.3d at 1175.

B. *The District Court Did Not Err in Refusing to Remand the Case to the ALJ.*

To justify a remand, Mayes must show that the herniated disc diagnosis is material to determining her disability, and that she had good cause for having failed to produce that evidence earlier. *See* 42 U.S.C. § 405(g) (2001).

▮ To be material under section 405(g), the new evidence must bear "directly and substantially on the matter in dispute." *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir.1982). Mayes must additionally demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. *See Booz*, 734 F.2d at 1380–81. Mayes has not shown

that the new evidence was material, as the record lacks evidence that she had herniated discs at and before the ALJ Hearing. At most, Mayes points to Dr. Buehler's statement that, when he saw Mayes in 1994, he felt "she was suffering from some degeneration at L4–5." The condition diagnosed in 1997 may or may not be the same as or related to the 1994 "degeneration at L4–5."[4] Reviewing the matter de novo, we agree with the district court's refusal to remand the matter to the ALJ, as Mayes does not demonstrate the "reasonable possibility" that the condition diagnosed in November 1997 even existed when the ALJ Hearing was held in May 1997. *See Booz*, 734 F.2d at 1380–81.

Although Mayes testified at the hearing that her back hurt and that she had experienced some symptoms that she now asserts were associated with back injuries, Mayes' back problems were not significantly at issue at the ALJ Hearing.[5] Mayes' arguments would be more persuasive if her back problems had indeed been at issue in the ALJ Hearing, even though not diagnosed until later. *See, e.g., Lisa v. Secretary of Health & Human Servs.*, 940 F.2d 40 (2d Cir.1991). However, while Mayes' past medical history indicated that she had had some back problems, none of the disabilities Mayes claimed before the ALJ was a back problem.

▮ Even assuming that Mayes' back problems were in dispute at the ALJ Hearing and that she meets the materiality requirement, the district court did not abuse its discretion in denying Mayes' re-

---

4. While the court could speculate that Mayes' degenerative discs developed into herniated discs, there is no evidence in the record supporting that conclusion. At the very least, Mayes had the burden of showing that the two conditions were related.

5. Mayes concludes that she presented evidence of back problems by detailing her complaints to her rheumatologist and testifying that her legs dragged, gave out, and went numb, and that she had hip and knee problems. However, Mayes submitted no medical evidence connecting these symptoms to her back problems.

mand request because Mayes failed to show good cause for not having offered the evidence in issue earlier. A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied. To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied"); *see also Sanchez v. Secretary of Health & Human Servs.*, 812 F.2d 509, 512 (9th Cir.1987) (holding that the applicant lacked good cause to remand for consideration of two psychological examinations prepared after the applicant's disability determination when his attorney knew of the applicant's memory loss but failed to explain why the applicant had not requested a mental evaluation or pressed his mental impairment claim at the hearing before the ALJ). The claimant must also establish good cause for not having sought the expert's opinion earlier. *Clem*, 894 F.2d at 332.

Mayes fails to explain why she did not seek or could not have obtained an evaluation of her back before the ALJ Hearing.[6] Mayes mentioned "Spinal Problems" on her initial application for disability benefits in 1988. When the Social Security Admin-

istration was reviewing her eligibility for benefits in 1996, Mayes complained of rheumatoid arthritis in her spine. At the ALJ Hearing, Mayes only mentioned that her back hurt. If Mayes' back problems were disabling, she should have sought a diagnosis of or treatment for her back problems earlier. At the ALJ Hearing, Mayes chiefly complained about other medical problems. An ALJ cannot be responsible for diagnosing a problem that a claimant decides not to pursue. Given this background, we conclude that the district court did not abuse its discretion in finding that Mayes' November 1997 diagnosis of herniated discs did not provide good cause for the remand of the case to the ALJ for a new determination in light of that subsequent diagnosis.

## IV. *CONCLUSION.*

We affirm the ALJ's decision that Mayes was not disabled for purposes of receiving disability insurance benefits. The ALJ's decision was supported by substantial evidence and was based on the proper legal standard.

We also affirm the district court's refusal to remand the case to the ALJ for consideration of newly discovered evidence. That new evidence was not material to the ALJ's disability determination. Even if the new evidence was material, the district court did not abuse its discretion in determining that Mayes had failed to show

---

**6.** Mayes may have been attempting to demonstrate good cause by claiming that her "medical plan had her in the care of the rheumatologist [, Dr. Taverna,] and [that] she was not referred back to her orthopedic doctor [, Dr. Buehler,] until after the hearing." However, Mayes has not pointed to any evidence in the record indicating that her health plan did not allow her to go to another doctor for treatment and/or evaluation of her back problems. Nor do Dr. Taverna's notes indicate that Mayes was constantly complaining of back pain, belying any claim that the reason her

herniated discs were not diagnosed was that her insurer would not allow her to see a specialist for that pain. If she was restricted to seeing a single doctor, one would expect Mayes to have been complaining of her back pain to Dr. Taverna, as his medical notes indicate that Mayes discussed varied medical conditions with him, ranging from shortness of breath to arthritis, pap smears, pelvic exams, and drinking and smoking. Dr. Taverna's notes indicate that Mayes complained of back pain only once, on April 18, 1997.

good cause for not having introduced that evidence earlier.

AFFIRMED.